UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:08CV-00070-EHJ

FREDDIE HOLIDAY                                              PLAINTIFF

VS.

MICHAEL J. ASTRUE,
Commissioner of Social Security                         DEFENDANT

## FINDINGS OF FACT, CONCLUSIONS OF LAW
## AND RECOMMENDATION

### BACKGROUND

Before the Court is the complaint (DN 1) of Freddie Holiday ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). Both the plaintiff (DN 10) and the defendant (DN 11) have filed a Fact and Law Summary.

The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 9) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. 28 U.S.C. Section 636(b)(1)(B). By Order entered October 1, 2008 (DN 10), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

### FINDINGS OF FACT

Plaintiff filed an application for Supplemental Security Income payments on February 8, 2006 (Tr. 60-63). Plaintiff alleged that he became disabled on January 1, 2006 as a result of

arthritis in lower lumbar (Tr. 67-68). Administrative Law Judge James E. Craig("ALJ") conducted a hearing on September 4, 2007 in Owensboro, Kentucky (Tr. 244). The plaintiff was present and represented by attorney Brad Rhoads. Also present and testifying was John Grenfell, Ed.D., as a vocational expert (Tr. 244).

In a decision dated December 11, 2007, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 9-18). At the first step, the ALJ relied on plaintiff's testimony to find that he had not engaged in substantial gainful activity since February 8, 2006 (Tr. 11). At the second step, the ALJ concluded that plaintiff's diabetes mellitus, spine disorder, and pancreatitis and alcoholism are "severe" impairments within the meaning of the regulations (Tr. 11-12). At the third step, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 12).

At the fourth step, the ALJ found that plaintiff has the residual functional capacity to perform less than a full range of sedentary work because he is limited in his ability to push or pull repetitively with his upper and lower extremities; he must be able to alternate between sitting and/or standing at will; he can stand and/or walk for two hours in an eight hour workday; he can occasionally stoop and crouch; he should avoid kneeling and crawling; he should avoid concentrated exposure to weather, extreme cold, and extreme heat; he should avoid concentrated exposure to vibrating machinery, moving mechanical parts, electrical shock and unprotected heights; and he can carry out simple instructions and make simple decisions (Tr. 12-16). The ALJ also found that plaintiff's residual functional capacity prevented him from performing any of his past relevant work (Tr. 16). At the fifth step, the ALJ relied on testimony from the vocational expert to find plaintiff

2

can perform a significant number of jobs that exist in the national economy given his age, education, prior work experience and residual functional capacity (Tr. 16-17). The ALJ concluded that plaintiff was not disabled and, therefore, denied plaintiff's application (Tr. 17-18).

Plaintiff timely filed a request for review of the ALJ's decision (Tr. 6). The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 3-5).

<u>CONCLUSIONS OF LAW</u>

The Social Security Act ("Act") authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); <u>Barnhart v. Walton</u>, 535 U.S. 212, 214 (2002); <u>Abbott v. Sullivan</u>, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. <u>See</u> "Evaluation of disability in general," 20 C.F.R. Sections 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1)    Is the claimant engaged in substantial gainful activity?

2)    Does the claimant have an impairment or combination of impairments that significantly limits his or her ability to do basic work activities?

3

3)      Does  the claimant have an impairment that satisfies the duration requirement and meets or medically equals the criteria of a listed impairment within Appendix 1?

4)      Does the claimant have the residual functional capacity to return to his or her past relevant work?

5)      Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied plaintiff's claim at the fifth step.

As previously mentioned, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 3-5).  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); See 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Serv's., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Serv's., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serv's., 987 F.2d 1230, 1233 (6th Cir. 1993)).  In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Serv's., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

4

Plaintiff challenges findings the ALJ made in conjunction with the fourth step in the sequential evaluation process (DN 10). At that step, the ALJ made findings regarding the weight assigned to medical source statements in the record[1], plaintiff's credibility[2], plaintiff's residual functional capacity[3], the physical and mental demands of plaintiff's past relevant work, and plaintiff's ability to return to the past relevant work (Tr. 12-16). The undersigned will first address plaintiff's argument regarding the weight assigned to the medical source statements of the treating physician, Dr. Norsworthy (DN 10).

Plaintiff argues that the ALJ erred in failing to give "controlling weight" to the opinions expressed by Dr. Norsworthy and in failing to state any sufficient reason for rejecting those opinions (DN 10). In response, defendant argues that the ALJ properly found Dr. Norsworthy's opinions were inconsistent with his own medical records; the reports of the two examining physicians, Drs. Witwer and Nau, to which the ALJ assigned great weight; and the neurological and extremity exams performed in March 2007 at the Ohio County Hospital (DN 11). Defendant also contends that the ALJ provided good specific reasons for discounting Dr. Norsworthy's opinions (DN 11).

While the regulations require Administrative Law Judges to evaluate every medical

---

[1]20 C.F.R. § 416.927(d).

[2]In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. § 416.929; Social Security Ruling 96-7p.

[3]The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 416.929, 416.945(a), 416.946.

5

opinion in the record, the process of assigning weight to medical opinions in the record begins with the determination whether to assign controlling weight to the medical opinion of the treating source. 20 C.F.R. § 416.927(d).  Controlling weight is assigned to the medical opinion of a treating source only when it is both well supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record.  Social Security Ruling 96-2p; 20 C.F.R. § 416.927(d)(2); Bogle v. Sullivan, 998 F.2d 342, 347-348 (6th Cir. 1993); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 857 (6th Cir. 1990).  When controlling weight is assigned to the medical opinion of the treating source the Administrative Law Judge is not required to assign weight to the medical opinions from examining and/or non-examining sources. 20 C.F.R. §§ 416.927(d) and (f)(ii).

Notably, if controlling weight is not assigned to the medical opinion of the treating source then the Administrative Law Judge must determine how much weight it should be accorded and set forth in the administrative decision good reasons for the weight given to the medical opinion. Social Security Ruling 96-2p; 20 C.F.R. § 416.927(d)(2); Wilson v. Commissioner of Social Security, 378 F.3d 541, 545-546 (6th Cir. 2004) (If an Administrative Law Judge discounts the opinion of a treating physician, the Administrative Law Judge must provide "good reasons" for doing so).  Additionally, the Administrative Law Judge must determine how much weight should be given to medical opinions from examining and/or non-examining sources and provide an explanation in the administrative decision.  20 C.F.R. §§ 416.927(d) and (f)(ii).

At issue are the medical opinions that the treating general practitioner, Dr. Norsworthy, expressed in a May 10, 2007 letter (Tr. 233) and in a September 13, 2007 statement (Tr. 241-243).  In the May 10, 2007 letter, Dr. Norsworthy opined due to back pain, in an eight hour

6

workday plaintiff would need to lay down two to three hours; avoid regular lifting; limit occasional lifting to less than twenty pounds; and have limitations on climbing, stooping or crawling (Tr. 233). Additionally, Dr. Norsworthy indicated due to acute pancreatitis plaintiff experienced significant pain and difficulties (Tr. 233).

In the September 13, 2007 statement, Dr. Norsworthy opined due to back pain plaintiff would be limited to sitting no more than thirty minutes to an hour at one time and no more than three hours in an eight hour day; standing no more than fifteen to twenty minutes at one time and no more than one to two hours in an eight hour day; walking no more than one block without having to take a break; the need to lie down or recline to control pain levels; and avoid bending, stooping, crawling or climbing (Tr. 241-242). Notably, the only objective findings Dr. Norsworthy cited is the May 2006 MRI[4] (Tr. 241-242). According to Dr. Norsworthy, the MRI revealed marked degenerative changes at L4-L5 and L5-S1 as well as a congenitally small canal with a large volume of epidural fat compressing the thecal sac (Tr. 241-242). Additionally, Dr. Norsworthy opined that flare ups of pancreatitis would interfere with plaintiff's ability to regularly be at the job site (Tr. 242). Notably, Dr. Norsworthy believed that plaintiff's alcoholism did not have anything to do with his present disability (Tr. 242).

The ALJ set forth several reasons why he did not accord controlling weight and discounted these two medical opinions from Dr. Norsworthy (Tr. 14-16). Specifically, the ALJ concluded such restrictive limitations were inconsistent with the frequency that Dr. Norsworthy

---

[4]The MRI was performed on May 8, 2006, it demonstrated degenerative disc disease at L4-5 and L5-S1 with collapsed disc spaces at both levels (Tr. 135, 227). Additionally, it showed that plaintiff has a congenitally small canal with a large volume of epidural fat compressing the thecal sac at L3-4 (Tr. 227, 241).

scheduled office visits; the consulting neurosurgeon, Dr. Witwer, not recommending surgical intervention and providing plaintiff with the telephone number for vocational rehabilitation[5]; and findings in Dr. Norsworthy's own medical records[6] (Tr. 14-16).  The ALJ also noted the lack of medical evidence to support the restrictions expressed by Dr. Norsworthy (Tr. 16).  Further, the ALJ found Dr. Norsworthy's opinion that plaintiff's alcoholism played no role in his disability inconsistent with the doctor's own medical records that indicated plaintiff's pancreatitis is alcohol related[7]; plaintiff exhibited noncompliant behavior to treatment for his alcoholism, pancreatitis and diabetes[8]; and a hemoglobin A/C level on July 17, 2007 that indicated plaintiff was still drinking (Tr.

_____

[5]On July 11, 2006, Dr. Witwer performed a neurosurgical evaluation at the request of Dr. Norsworthy (Tr. 135-139).  Dr. Witwer noted that the May 2006 MRI of plaintiff's lumbar spine revealed severe degenerative disc disease at L4-5 and L5-S1 with collapsed disc spaces at both levels, some mild lateral recess stenosis, no significant large disc bulge, and no nerve root compression (Tr. 135).  Dr. Witwer's diagnostic impression was lumbar spondylosis (Tr. 135). He recommended a pain management regime because he did not think surgical intervention would provide plaintiff with symptomatic relief (Tr. 135).  A July 18, 2006 office note reads "Pt. has been given Voc Rehab's # & is seeking help for funding medical expenses" (Tr. 134).

[6]Interestingly, only Dr. Norsworthy's May 4 and August 11, 2006 treatment notes mention plaintiff's back having a decreased range of motion on examination (Tr. 222, 220).

[7]A February 23, 2007 treatment note prepared by Dr. Norsworthy indicates plaintiff was sent to the hospital for "STAT outpatient lab" because his symptoms indicated possible pancreatitis (Tr. 237).  Records from Ohio County Hospital indicate plaintiff was admitted with a diagnostic impression of acute pancreatitis, nausea, abdominal pain and some vomiting (Tr. 173-174).  The consulting gastroenterologist, Dr. Riccio, expressed a diagnostic impression of alcoholic pancreatitis (Tr. 171-172).  The discharge summary, prepared by Dr. Norsworthy, indicated a diagnosis of severe pancreatitis possibly alcoholic in nature and history of alcohol abuse (Tr. 169).  In a March 12, 2007, office note Dr. Norsworthy's diagnostic impression was diabetes with history of alcohol abuse (Tr. 237).

[8]The discharge summary, prepared by Dr. Norsworthy, indicates on February 26, 2007, plaintiff signed himself out of the Ohio County Hospital against medical advice without waiting for instruction or medications from either Dr. Norsworthy or Dr. Riccio (Tr. 169-170).  Dr. Norsworthy indicated a diagnosis of severe pancreatitis possibly alcoholic in nature and history of alcohol abuse (Tr. 169).  The discharge summary indicates plaintiff was in the process of getting better when plaintiff abruptly signed himself out "for no apparent reason except perhaps

14-16).   Further, the ALJ considered comments from the consultative examiner, Dr. Nau, that

indicated plaintiff frustrated his attempts to make an objective assessment and plaintiff has no

interest in remedying his alcohol and tobacco abuse problem[9] (Tr. 14).   In sum, the undersigned

concludes the ALJ's findings are supported by substantial evidence in the record and fully comport

with applicable law.

Notably, the ALJ found that Dr. Norsworthy's daily medical records including the

hospital records are generally persuasive as to plaintiff's ability to work and gave them great weight

(Tr. 16).   Additionally, the ALJ gave great weight to Dr. Riccio (a consulting gastroenterologist),

---

that he wanted to go home so he could maybe get something to drink according to the nurses"
(Tr. 170).

[9]On June 3, 2006, at the request of the State agency, Dr. Nau performed a consultative
physical examination that included range of motion testing (Tr. 117-119).   Additionally, Dr. Nau
considered an x-ray report that suggested degenerative disc disease at L5-S1 (Tr. 118).   In regard
to plaintiff's chronic low back pain Dr. Nau commented as follows:

> "It is difficult for me to objectively assess how limiting this is for
> the patient as he puts on quite an act during the exam.   In fact, he
> points to a place on his sacrum that is well below the L5-S1 area,
> thus [sic] the source of his pain.
>
> Based on his exam, he exhibits limitation in prolonged standing,
> moving about, lifting and carrying heavy objects.   I find no
> limitation with hearing, seeing, speaking, handling objects, or
> understanding normal conversational voice.   No limitation with
> gross manipulation or grip strength.   It is difficult to assess the
> need for the assistive devices, he refuses to walk without it during
> the exam.   I find no true objective findings for motor or sensory
> abnormality in his lower extremities.   This patient clearly has an
> alcohol and tobacco abuse problem for which he clearly has no
> interest in remedying and this is likely source of many of reasons
> why he is unable to keep gainful employment."

(Tr. 118-119).   The assistive device Dr. Nau refers to is a cane (Tr. 118).

Dr. Witwer (a consulting neurosurgeon), and Dr. Nau (a consultative examiner), because their medical records were consistent with each other and the medical evidence in the record that indicated plaintiff is not precluded from all work-related activity (Tr. 16). The ALJ gave limited weight to the opinions expressed by both non-examining State agency medical consultants because the ALJ believed that plaintiff's back condition limited him to work at the sedentary exertional level (Tr. 15). The undersigned concludes these findings are supported by substantial evidence in the record and fully comport with applicable law.

Next, plaintiff argues the ALJ erred in failing to accept his testimony as fully credible and in failing to state sufficient reasons for doing so (Tr. 10). Defendant argues the ALJ stated sufficient reasons for discounting plaintiff's credibility and those findings are supported by substantial evidence in the record (Tr. 11).

Plaintiff's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to give rise to the pain and other symptoms alleged. 20 C.F.R. § 404.1529(a). In determining whether a plaintiff suffers from debilitating pain and other symptoms, the two-part test set forth in Duncan v. Secretary of Health and Human Serv's., 801 F.2d 847, 853 (6th Cir. 1986), applies. First, the ALJ examined whether there was objective medical evidence of underlying medical conditions (Tr. 11-16). Then the ALJ determined the objectively established medical conditions were not of such severity that they could reasonably be expected to produce the alleged disabling pain and other symptoms (Tr. 14-16). Id. The ALJ explained that plaintiff's statements regarding his back condition are not entirely credible in light of Dr. Norsworthy's treatment notes, the MRI report, and the medical reports of the

10

consultative examiners Drs. Nau and Witwer (Tr. 14-16).  Since the reported pain and other symptoms suggested impairments of greater severity than could be shown by objective medical evidence, the ALJ considered other information and factors that may be relevant to the degree of pain and other symptoms alleged (Tr. 13-16).  20 C.F.R. § 404.1529(c)(3).  For example, the ALJ considered the frequency of scheduled office visits for plaintiff's back pain.  20 C.F.R. §404.1529(c)(3)(v); Social Security Ruling 96-7p.  The ALJ observed that plaintiff's statements regarding his pancreatitis were inconsistent with treatment records from Dr. Norsworthy and the hospital indicating his noncompliant behavior such as the failure to follow prescribed treatment and continuing to drink alcohol (Tr. 14-16).  20 C.F.R. § 404.1529(c)(4); Social Security Ruling 96-7p.

The ALJ found from the medical record and the plaintiff's testimony that plaintiff does not suffer pain and symptoms to the extent he testified (Tr. 13-16).  In the absence of detailed corroborating evidence of the plaintiff's subjective complaints, it becomes the duty of the ALJ to resolve the issue of plaintiff's credibility.  Since tolerance of pain and other symptoms is a highly individualized matter, and a determination of disability based on pain depends, of necessity, largely on the credibility of plaintiff, the conclusion of the ALJ, who has the opportunity to observe plaintiff's demeanor, "should not be discharged lightly."  Houston v. Secretary of Health and Human Serv's., 736 F.2d 365, 367 (6th Cir. 1984) (citing Beavers v. Secretary of Health, Educ. and Welfare, 577 F.2d 383 (6th Cir. 1978)).  The undersigned concludes that the ALJ's findings regarding the plaintiff's credibility are supported by substantial evidence and fully comport with applicable law.

Next, plaintiff argues the ALJ erred in failing to determine that the combined effects of his impairments rendered him totally disabled (DN 10).  The undersigned has carefully reviewed the record and concludes that the ALJ did consider the combined effects of plaintiff's impairments

in finding plaintiff does not meet or equal an impairment listed in Appendix A and plaintiff has the residual functional capacity to perform less than a full range of sedentary work (Tr. 11-16).  Nor is there any merit to plaintiff's argument that the ALJ erred in improperly speculating as to medical conditions (DN 10).

Finally, plaintiff argues the ALJ's finding at the fifth step is not supported by substantial evidence in the record (DN 10).  At the fifth step, the burden shifts to the Commissioner to show there exists a significant number of jobs in the national economy that plaintiff can perform, given his age, education, prior work experience and residual functional capacity.  20 C.F.R. §404.1520(a)(4)(v) and (g); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980).  A vocational expert's testimony can constitute substantial evidence to meet this burden provided it is based on a hypothetical question that accurately portrays the limitations imposed by plaintiff's impairments. Varley v. Secretary of Health and Human Serv's., 820 F.2d 777, 779 (6th Cir. 1987); Bradford v. Secretary, Dep't. of Health and Human Serv's., 803 F.2d 871, 874 (6th Cir. 1986) (per curiam).

Here, plaintiff argues the vocational expert's testimony upon which the ALJ relied does not constitute substantial evidence to meet this burden because it is based on a hypothetical question that does not accurately reflect his impairments (DN 10).  Plaintiff's argument is premised on the belief that the functional limitations expressed by Dr. Norsworthy, not the residual functional capacity findings of the ALJ, accurately reflect his impairments (DN 10).  Plaintiff points out that the vocational expert confirmed there would not be any jobs available if he considered the functional limitations expressed by Dr. Norsworthy (DN 10; Tr. 268-271).  There is no merit to plaintiff's argument because the ALJ's residual functional capacity findings are supported by substantial evidence in the record and fully comport with applicable law.  In sum, the Commissioner satisfied

12

his burden at the fifth step.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be filed within ten (10) days or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies:        Counsel

13